## Upton *v.* Wimbrow.

### Opinion delivered May 2, 1921.

TRESPASS—TREBLE DAMAGES.—Under Crawford & Moses' Digest, § 10320, providing for treble damages for cutting timber on another's land and § 10322, providing that if defendant had probable cause to believe that the land was his own, only single damages should be recovered, *held* that where defendant in good faith accepted a previous survey as marking the true line, not knowing that there was an error in the survey, treble damages were not recoverable for cutting timber up to such line.

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; affirmed.

STATEMENT OF FACTS.

Frank Upton sued John Wimbrow in the circuit court in an action of trespass to recover damages for cutting and removing a quantity of trees from his land.

The action was based upon sections 10320-10322 of Crawford & Moses' Digest. Wimbrow cut from Upton's land a number of hickory trees, amounting in the aggregate to 76,652 feet, of the value of $613.21, and converted the same to his own use.

According to the testimony of Upton, his boundary line was plainly marked by blazes cut on the trees, and it was easy to ascertain where his boundary line was. Other evidence was adduced by him tending to show that

his boundary line was plainly marked, and that it was easy to see the blazes on the trees marking it.

According to the testimony of Wimbrow, he is engaged in the sawmill business and had been cutting timber for the Pinepole and Shaft Company for four years. That company would furnish him stumpage, and he would sell it the lumber cut by his mill. He bought some timber from that company in Sevier County, Ark., and directed his cutters not to cut over the line shown them. Before Wimbrow purchased the timber, the Pinepole and Shaft Company had had the land on which it stood surveyed and the boundary line marked by Tom Cash. Wimbrow told his timber cutters to follow the line established by Tom Cash which was plainly marked on the trees by blazes made by him. Wimbrow did not know that the timber in question was owned by Upton or claimed by him until after he had cut and removed it from the land. He did not go upon the land himself and did not notice the old blazes which marked Upton's boundary line.

Tom Cash was also a witness for Wimbrow. According to his testimony, while he was not a regular surveyor and timber estimator, he did nearly all of that work for the Pinepole and Shaft Company. That company sent him to survey its land situated next to Upton's land. He made the survey and marked the boundary line of the company by hacking, or blazing the trees. After he made the survey and established the line of the company, it sold the timber to Wimbrow. Subsequently it was ascertained that Wimbrow had cut and removed trees from Upton's land. None of the trees cut and removed by Wimbrow, however, were beyond the line established by Cash. After it was ascertained that Wimbrow had cut and removed trees from Upton's land, Cash went back and further examined the land and found that he had made a mistake in establishing the boundary line. There was a jog or a fractional part of a section next to the land surveyed by him, and this caused him to make the mistake. Cash did not notice the old blazes on the trees

which had been formerly put there to establish Upton's boundary line.

Evidence was introduced in rebuttal by Upton tending to show that a good surveyor could have easily discovered the jog next to the company's land and need not have made any mistake in establishing the boundary line.

The jury returned a verdict for Upton in the sum of $613.21, and from the judgment rendered, Upton has appealed.

*E. K. Edwards* and *B. E. Isbell,* for appellant.

The court erred in not allowing plaintiff treble damages for the trespass. The instructions, 2, 3 and 4, asked by plaintiff and refused are in the language of the statute as construed by this court and embody the law, and it was error to refuse them. C. & M. Digest, §§ 320-2; 96 Ark. 87; 116 *Id.* 207. The lines of the land were clearly blazed, and the fence put Wimbrow on notice of the line, which he could not disregard, and he is liable. 130 Ark. 550; 132 *Id.* 474. A man can not be deprived of his property without his consent or by due operation of law. 65 Ark. 451. See, also, 96 Ark. 87.

Treble damages were recoverable. 116 Ark. 207; 105 *Id.* 157.

The holding of the court that the evidence for treble damages is clearly erroneous.

*Lake & Lake,* for appellee.

The court properly refused to submit the question of treble damages to the jury. This is fully sustained by the evidence. 73 Ark. 464; 31 *Id.* 286; 101 *Id.* 36.

The measure of damages for the conversion of timber is its value at the time and place of conversion if the cutting is done in good faith, but if in bad faith the enhanced value of the timber may be recovered. 117 Ark. 127. It is not true that if appellee, having admitted the cutting, the burden of proving probable cause for believing he had authority to cut and carry away the timber, was on appellee. 101 Ark. 36; 96 *Id.* 47.

The evidence does not support a verdict for any penalty.

HART, J. (after stating the facts). It is the contention of the plaintiff, Upton, that the court erred in not allowing him treble damages for the trespass. The plaintiff relies on section 10320 of Crawford & Moses' Digest, which provides, in substance, that if any person shall cut down or remove any timber growing on the land of another, every person so trespassing shall pay the party injured treble its value.

Section 10322 of Crawford & Moses' Digest provides that if, on the trial of any action brought under the provisions of the act, it shall appear that the defendant had probable cause to believe that the land on which the trespass is alleged to have been committed is his own, the plaintiff shall recover single damages only.

In construing a statute in all essential respects similar to our own, and in which it was provided that if it should appear that the defendant had probable cause to believe that the land on which the trespass was committed was his own, the plaintiff should recover single damages only, the Supreme Court of Michigan held that the right of the plaintiff to recover treble damages would depend upon the good faith of the defendant. *Wallace* v. *Finch*, 24 Mich. 255. Mr. Justice Graves, who delivered the opinion of the court, in discussing the statute said that no element of wilfulness could avail the defendant from legal liability for single damages under the statute. Continuing the learned justice said:

"The question of treble damages, however, stands on a different principle altogether. When this law gives single damages, it has a single object, and that is to redress the injured party. But when the damages are to be trebled, the object is two-fold, namely: to redress the injury done, and also to punish the wrong-doer. No other explanation of these provisions is possible, and, according to well settled rules, when a law is susceptible of penal applications in special cases, such applications of

it ought to be closely confined to cases within its princi-
ple. Now, when we come to interpret this statute, we
must either hold that the Legislature meant that any
person, however blameless in a moral point of view, who
should be within the inculpatory words of the first sec-
tion, and not within the exact words of the saving provi-
sions of the second section, should be punished; or, on the
contrary, that the Legislature meant that the penal appli-
cation should be made only in cases marked by wanton-
ness, wilfulness or evil design. And it is hardly admis-
sible to impute the former purpose to the Legislature.

"Indeed, the nature of the limitations contained in
the second section indicates very clearly that no such
purpose was contemplated. Those limitations all point
to the exclusion of the penal application where the tres-
pass is not aggravated by bad faith or other positive
blame, and they amount to a legislative intimation that
the penal provisions were not intended to apply where
punishment beyond redress for injury would be inapt,
impolitic and unjust."

In *Barnes* v. *Jones,* 51 Cal. 303, it was held that the
lower court erred in trebling the damages, and the court
held that, while the statute in that State did not so state,
in express terms, it was clear that it was not intended to
apply to cases in which the trespass was committed
through an innocent mistake as to the boundary of a tract
of land claimed by the defendant.

In *Batchelder* v. *Kelly,* 10 N. H. 436, 34 Am. Dec.
174, the court said that to subject a party to the penalty
prescribed by statute it must appear that the act was
done knowingly and wilfully and not through mistake or
accident.

In *Perkins* v. *Hackleman,* 26 Miss. 41, 59 Am. Dec.
243, the court held that a party supposing himself to be
cutting timber on his own land, but by mistake cutting
on another's land, is liable for actual damages only. In
construing such a statute in the case of *Whitecraft* v.
*Vandever,* 12 Ill. 235, the court said:

"The object of the statute is to furnish an additional remedy to the owner of the land, and also to punish the wrong-doer.

"To subject a party to such punishment, he must have committed the wrong knowingly and wilfully, or under such circumstances as show him guilty of criminal negligence. It could never have been the intention of the Legislature to impose a penalty upon a person, who, supposing in good faith that he was cutting upon his own land after having taken reasonable pains to ascertain its boundaries, should, inadvertently and by mistake, cut trees upon the land of another."

In *Russell* v. *Irby,* 13 Ala. 131, the court said that the general tenor of the statute was such as wholly to preclude the idea that it was designed to apply to unintentional trespasses. These decisions construing similar statutes in other States are in accord with the decision of this court in *Fogel* v. *Butler,* 96 Ark. 87.

There is nothing in the record in the present case tending to show that the defendant cut the timber knowing that he had no authority to do so, or without having probable cause to believe it to be his own. He cautioned his timber cutters not to go beyond the line established by Tom Cash, which he believed to be his boundary line. Cash had been employed by the Pinepole and Shaft Company to establish the line before that company sold the timber to Wimbrow. There is nothing in the record tending to show that Wimbrow had any reason to believe that Cash was negligent in making the survey. He made the survey before Wimbrow purchased the timber, and for the very purpose of establishing the boundary line. There is nothing tending to show that Wimbrow knew that Cash had been guilty of negligence in making the survey, or that he had anything to do with making it. He simply took the line shown him as the true boundary, and there is nothing in the record tending to impeach his good faith in the matter.

The court properly allowed the plaintiff to recover only single damages under the facts disclosed by the

record. The undisputed facts show that the defendant had probable cause to believe that the land on which the timber in question was cut was his own.

Therefore it is unnecessary to consider or discuss the instructions given or asked on the question of treble damages.

It follows that the judgment must be affirmed.